**FRANCIS et al. v. KANE.**

No. 6174.

Court of Civil Appeals of Texas.
Amarillo.

Oct. 15, 1951.

Rehearing Denied Nov. 12, 1951.

Edward L. Poole and R. L. Templeton, Wellington, for appellants.

R. H. Cocke and W. P. Spillman, Wellington, for appellee.

PITTS, Chief Justice.

Appellee, Tom Kane, filed suit against appellants, Charlie Francis and his son Hershel Francis, for actual and exemplary damages because of alleged personal injuries he sustained as a result of a personal assault made upon him by appellants acting together in the premises. The case was tried to a jury on February 20, 1951, and upon its verdict judgment was rendered for appellee against appellants jointly and severally for the sum of $2,500 as actual damages only from which judgment appellants have perfected their appeal.

Appellants attack the trial court's judgment for two reasons charging error because of the trial court's refusal to submit their special requested issue number one to the jury and because of jury misconduct.

The evidence reveals that appellee was a married man 42 years of age; that he had been engaged in flying airplanes for fifteen years, during a part of which time he had served in the Army Air Corps for thirty-four months; that at the time of his alleged injuries he was employed under written contract by the City of Wellington to operate and manage its air base known as Marian Airpark where a part of his duties were to conduct a flying school and to supply fuel to the public for aircraft use. On March 20, 1950, appellants tried to buy gasoline from appellee and they were advised by appellee that he was out of gasoline. Early the following morning appellants inquired of the Wellington City Manager and his gasoline truck driver to know if more gasoline had been delivered to Marian Airpark and, upon finding it had not, they asked the City Manager to see about it. Later that morning appellants went to appellee's place of business where they found appellee sitting on the driver's side in his automobile in front of his office. Appellants got out of their automobile and both approached appellee sitting in his automobile when appellant Hershel Francis opened the door of appellee's automobile, caught him by the left arm and said to appellee, "Let's go measure that gasoline." In reply appellee said, "You go to hell". Whereupon appellant Hershel Francis attacked appellee while he was still sitting in his automobile by beating and choking him. After knocking appellee over in the front seat of his automobile Hershel Francis got in the automobile on top of appellee and beat him some more. In the meantime appellant Charlie Francis went around to the opposite side of appellee's automobile and tried to open the front door but found it locked. Charlie Francis then told his son, Hershel Francis, to pull appellee out of the automobile. Hershel Francis testified that he was not doing much good fighting inside the automobile, and when he heard his father tell him to pull appellee out of the car, he then pulled him out of the automobile and there finished the fight. Both appellee and a nine year old girl, who stood by and saw the fight, testified, in effect, that both appellants actively participated in the assault made upon appellee but appellants deny that appellant Charlie Francis did any more than try to open the right-hand automobile door and that he did tell his son Hershel during the fight inside the automobile to pull appellee out of the automobile, which Hershel did in compliance with his father's suggestion, after which he continued to beat appellee. The evidence further shows that Hershel Francis was a much larger man than appellee was.

Doctor C. B. Jones, a regular practicing physician at Wellington, testified that he examined and treated appellee soon after the alleged assault and on the same day thereof and that he treated him daily for several days and thereafter intermittently for several months. He further testified that appellee had a swelling and discoloration of his face and right eye and a fracture from his nose into his right antrum when he first saw him; that his lower

lip was cut and lacerated with a hole clear through the same; that within forty-eight hours there was discoloration of his throat and chest and an X-ray showed a fracture from his right nostril into the sinus or his cheek bone; that appellee had a paralysis of the muscles over one ear and his lip, which prevented a normal use of the muscles on that side of his face. Doctor Jones further testified that he examined appellee several months later and again on the day of the trial and still found evidence of paralysis on one side of appellee's face and further found the need of an operation to correct his facial condition and to prevent a defective hearing.

Based upon these facts briefly stated, the jury found that, at the time of the alleged assault, appellee was not making or about to make an unlawful attack upon appellants or either of them and that it did not reasonably appear to appellants or either of them that appellee was making or about to make such an attack upon them or either of them. Based upon the evidence heard, the jury found that $2,500 would fairly compensate appellee for actual damages sustained by him by reason of his injuries received.

Appellants charge that the trial court erred in its refusal to submit to the jury their special requested issue inquiring if appellants were acting jointly in making the alleged assault upon appellee. There is evidence to the effect that appellant Charlie Francis helped to hold appellee while his son, Hershel, gave appellee the beating the evidence shows he received. That is denied by appellants but Charlie Francis testified that he tried to open the opposite door of appellee's automobile during the fight inside of the automobile but found the door locked and then he "encouraged" his son Hershel by "telling him what to do". He testified further that he told Hershel to pull appellee out of the automobile, which Hershel did and the fight continued. Appellant Hershel Francis testified that he was not doing so well trying to fight inside of the automobile, but he heard his father tell him to pull appellee out of the automobile, which he

did and the fight was there finished but appellee never did strike him.

4 Tex.Jur. 979, paragarph 113, says in part: "Where one person assists another in making an assault both are principals and liable in damages for the injury inflicted. Overt participation or some form of encouragement in the commission of the assault is required." In the case of Walker v. Kellar, Tex.Civ.App., 226 S.W. 796, 800, writ refused, the court held that in order for a person to be liable for damages as a principal in an unlawful assault, "He must have given aid or encouragement of some kind to the actual participants." 52 Am.Jur. 450, paragraph 111, says in part: "On the theory that the act of one is the act of all, the rule of joint and several liability of tort-feasors prevails where the tort-feasors act in concert or unity of action." The same volume, page 454, paragraph 114, further says: "One who commands, directs, advises, encourages, procures, instigates, promotes, controls, aids, or abets a wrongful act by another has been regarded as being as responsible as the one who commits the act, so as to impose liability upon the former to the same extent as if he had performed the act himself."

Appellants cite and rely on the case of Wichita County Water Improvement Dist. No. 1 v. McGrath, Tex.Civ.App., 31 S.W. 2d 457, 459, writ refused, by this court. We find no conflict between the rules of law enunciated in that case and the rules of law herein quoted by us. In fact, the opinion of this court in that case supports the foregoing announced rules of law by use of the following language: " 'To entitle the plaintiff to a verdict against all the defendants as joint trespassers it must appear that they acted in concert in committing the trespass complained of; if some aided and assisted the others to commit the trespass or assented to the trespass committed by others, having an interest therein, they are all jointly guilty; * * *.' "

In the case at bar it was admitted by appellants that they went together and for the same purpose to appellee's place of

business, got out of their automobile and went together to see appellee who was then sitting in his own automobile where the younger appellant, Hershel Francis, immediately attacked appellee while he was sitting in his own automobile and at the suggestion of his father, Charlie Francis, he pulled appellee out of his automobile on the ground where the fight continued. It appears from the testimony of appellants themselves that they "acted in concert in committing" the assault complained of and that Charlie Francis aided and assisted his son, Hershel Francis, in committing the same and that he, Charlie Francis, by his conduct and statements "assented to" the assault committed. According to the admissions made by appellants as witnesses, they were acting jointly in an unlawful assault made upon appellee under the authorities heretofore cited and they were jointly and severally liable therefor as a matter of law without the submission of appellants' special requested issue number one to the jury.

■ Appellants further charge that the trial court erred in overruling their motion for a new trial alleging misconduct of the jury and in refusing to hear evidence in support of such grounds. In paragraphs 8, 9 and 10 of their amended motion for a new trial, appellants alleged misconduct of the jury, named three jurors who, they alleged, would give evidence to that effect, attached affidavits of the jurors concerning such a charge thereto and made the affidavits a part of such allegations there made. Appellee specially excepted to appellants' allegations in paragraphs 8, 9 and 10 of their amended motion for a new trial for the alleged reasons that appellants did not there sufficiently allege grounds for a new trial on their charges of jury misconduct and that the ex parte statements of the alleged jurors could not be used or heard to impeach the jury verdict. Upon a proper hearing the trial court sustained appellee's said special exceptions and thereafter overruled appellants' motion for a new trial without permitting them to offer testimony on the issues of jury misconduct. At no time according to the record did appellants seek to amend or ask for permission to amend their pleadings as set out in their motion for a new trial after the trial court had sustained appellee's special exceptions to their said pleadings. Nowhere do appellants charge error or complain to this court about the trial court's action in sustaining appellee's special exception to their said pleadings. When the trial court sustained appellee's exceptions to paragraphs 8, 9 and 10 of appellants' amended motion for a new trial, such pleadings, together with the affidavits of the alleged jurors which were made a part of the pleadings of the said paragraphs, were then eliminated and excluded from appellants' other pleadings seeking a new trial in the case. The transcript reveals that appellants prepared a bill of exception showing the action of the trial court in connection with these matters and the same was approved by the trial court. But appellants failed to except thereto, bring the matter forward and present it to this court in any form as an assignment of error. In fact, we fail to find any mention made of the bill of exception in appellants' brief. If the trial court committed error in sustaining appellee's exceptions to a part of appellants' pleadings in their amended motion for a new trial, such has been waived by appellants because of their failure to challenge such and brief the question before this court. Rayburn v. Giles, Tex. Civ.App., 182 S.W.2d 9; Piedmont Fire Ins. Co. v. Ladin, Tex.Civ.App., 174 S.W. 2d 991.

■ Rule 324, Vernon's Texas Rules of Civil Procedure, makes the filing of a motion for a new trial, in a jury case, such as the case at bar, a prerequisite of appeal. Rule 320 sets forth the rules for preparing such a motion for a new trial. It requires that each ground relied on shall be specified and a ground not there specified shall not be considered on appeal. Rule 374 says the grounds set forth in such a motion shall constitute appellant's assignments of error on appeal. Rule 418 sets forth the requirements for the contents of appellant's brief. It is true that appellants set forth their alleged grounds of misconduct of the jury in their original amended mo-

tion for a new trial but such grounds were excluded from their pleadings when the trial court sustained appellee's exceptions thereto. Appellants do not complain here about such action of the trial court but they do complain because the trial court refused to hear and consider a matter that was not then supported by or even mentioned in the remainder of their pleadings. According to the record before us and for the reasons stated, it was not error for the trial court to overrule appellants' motion for a new trial without hearing and considering the matter of alleged jury misconduct. After appellee's special exceptions had been sustained, appellants' plea of jury misconduct had been excluded, leaving no pleadings to support a charge of jury misconduct.

Appellants cite and rely on the case of Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644, but they have not here met the requirements of the rules of law there announced. In that case appellee specially excepted to the allegations of jury misconduct set out in a motion for a new trial on the grounds that the motion was not verified and the facts were not sufficiently alleged to constitute jury misconduct. The trial court sustained the exceptions and refused to let the pleader amend the motion for a new trial even upon an urgent request to do so. The pleader perfected a bill of exception and presented the same to the appellate courts challenging the action of the trial court in sustaining the special exception and refusing a request to amend the motion for a new trial. By that means the alleged error of the trial court was preserved and presented to the appellate courts and the pleadings alleging jury misconduct as set out in the motion for a new trial were before the appellate courts. In that case appellants' contentions were sustained by the Supreme Court which also held that a motion for a new trial need not be verified. In the case at bar appellants did not ask to amend their pleadings after appellee's special exceptions were sustained. Neither did they present a bill of exception to this court challenging in any manner the action of the trial court in sustaining

the special exceptions and thus eliminating the pleading alleging jury misconduct upon which appellants were relying.

A careful examination of appellants' assignments of error and the record does not reveal reversible error. Appellants' points to the contrary are all overruled and the judgment of the trial court is affirmed.